ELISHA ROPER, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. ELISHA ROPER, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8642, 8643.   Promulgated August 22, 1927.

1. Evidence *held* not sufficient to show that the Commissioner erred in his determination of depletion based on discovery value.
2. Income from an exchange of property was received in 1920.
3. Amount of deduction allowable for taxes, determined.

*J. M. McMillin, Esq.*, for the petitioners.
*Thomas M. Wilkins, Esq.*, for the respondent.

These proceedings result from determinations by respondent of deficiencies in income tax as follows: Elisha Roper, for the year 1921, amounting to $666.16; Mrs. Elisha Roper for the year 1919, amounting to $10,259.82, and for the year 1921, amounting to $182. Upon motion by the parties, made and granted, the appeals were consolidated for hearing and decision.

Petitioners averred that errors were committed with reference to the following issues: (1) The basis of discovery value for the computation of the deduction from income in 1919 for depletion of oil wells allowable to the lessor who reserved and owned an undivided interest in a one-eighth royalty payable in oil, should be the fair market value of lessor's interest in the entire acreage included in the tract of land owned, and not the fair market value of the estimated oil reserves which were discovered, as computed by the respondent; (2) the income, amounting to $67,600, from an exchange of an interest in oil royalties for lands was received in 1920 when the exchange was effected, and not in 1919; (3) state, county and city taxes amounting to $6,086.78 were paid in the calendar year 1921 and were deductible from income in that year; (4) interest amounting to $3,510 was paid in the calendar year 1921 and was deductible from income in that year; (5) a sale of real estate to T. C. Campbell and T. L. Flagg in the calendar year 1921 was on the installment basis and not all of the income expected to be derived therefrom was taxable in 1921; (6) a deduction from income for depletion of oil reserves should be allowed in 1921; (7) a loss of $10,000 invested in the stock of the Great Southern Oil & Refining Co. should be allowed as a deduction from income in 1921; (8) a loss of $10,500 by reason

of a settlement with Gude and Ward of an unpaid balance of $20,- 000 due petitioners for property sold Gude and Ward should be allowed as a deduction from income in 1921; (9) a loss of $12,500 invested in the stock of the Liberty Refining Co. should be allowed as a deduction from income in 1921; (10) income from oil royalties from the separately owned lands of the petitioners was community income and not the separate income of the owner of the land; (11) not any of the income of the petitioners was the separate income of either of them. At the hearing evidence was adduced and arguments presented relative to issues numbered 1, 2, 3, 4, and 5. Relative to the fourth issue the parties agreed during the hearing to a deduction from income in 1921 of interest amounting to $4,936. In the fifth issue it was conceded by respondent that the sale is subject to the provisions of section 1208 of the Revenue Act of 1926, and that the income from this sale should be reported on the installment basis. Relative to all of the remaining issues the petitioner offered no evidence, and they are deemed abandoned.

### FINDINGS OF FACT.

The petitioners are husband and wife, residing at Plainview, Tex. Prior to 1918 and continuing through 1921, Elisha Roper, one of the petitioners, owned in his separate right 153 acres of land located in the John York Survey, Eastland County, Texas. During the same period, the petitioners owned jointly as community property 192 acres of land, also located in the John York Survey, Eastland County, Texas. The two tracts adjoined, and the entire aggregate of 345 acres was subject to a lease granted the Texas & Pacific Coal & Oil Co., in 1917, under the terms of which the petitioners were entitled to receive one-eighth of the oil, gas, and minerals produced from the 345 acres.

The petitioners sold undivided interests in their oil, gas, and mineral rights as follows:

On September 28, 1918, 3/345 of 1/8 to O. H. Taylor for $2,100, and 3/345 of 1/8 to Lem Hightower for $2,100, and 20/345 of 1/8 to Sikes and Wolf for $14,000; on October 2, 1918, 1/4 of 1/8 to U. M. Simon for $60,375; on March 3, 1919, 28/345 of 1/8 to W. C. Martin for $56,480. By agreement dated October 28, 1919, 4096/34500 of 1/8 to International Crude Oil Co. in exchange for 2,560 acres of land in Lynn County, Texas. This exchange resulted in a gain to petitioners of $67,600 when the exchange was effected some time in January, 1920. The value of the 2,560 acres of land in Lynn County, Texas, when received by petitioners, is not in evidence.

The deed to W. C. Martin for the 28/345 of 1/8 follows, so far as material:

| Elisha Roper, et ux<br>To) Mineral Deed<br>W. C. Martin | File No. 7871<br>The State of Texas<br>County of Eastland | Know All Men By<br>These Presents: |
|---|---|---|

That we, Elisha Roper and wife, Louise M. Roper, of Eastland County, Texas, for and in consideration of the sum of One Dollar     *Dollar* and other consideration ($1.00) cash in hand paid by W. C. Martin hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered and by these presents do grant, sell, convey, assign and deliver unto the said Grantee an undivided 28/345ths interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described land situated in Eastland County, Texas, to-wit: Being a part of the John York Survey and described in three tracts as follows:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Said land being now under an oil and gas lease executed in favor of Texas & Pacific Coal & Oil Co. It is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes 28/345ths of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

It is understood and agreed that 28/345ths of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in event that the above described lease for any reason becomes cancelled or forfeited then and in that event an undivided 28/345ths of the lease interests and all future rentals on said land *foir* oil, gas and other mineral privileges shall be owned by said grantee, he owning 28/345ths of all oil, gas and other minerals in and under said lands together with 28/345ths interests in all future rents.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Witness our hands this the 3rd day of March A. D. 1919.

ELISHA ROPER

LOUISE H. ROPER.

Filed for record April 1st, 1919, at 9 a. m.
Recorded April 30th, 1919, at 11:15 a. m.

Oil was first discovered on the 345 acres of land on February 12, 1919. About twenty oil wells, including six discovery wells, were drilled on the property. The first four discoveries were made prior to October, 1919. The posted price of oil at the date of the first four discoveries was $2.25 per barrel; at date of fifth discovery $2.50 per barrel; at date of sixth discovery in the year 1920, $2.75 per barrel. During 1919 there was a boom in oil properties in the vicinity of Eastland, Tex.

In computing deductions from income for depletion based on discovery value, respondent estimated that the gross reserves recoverable amounted to 933,250 barrels and the aggregate of the petitioners' shares of the oil discovered under the lands was 69,300 barrels, and

he estimated the discovery value of 69,200 barrels, discovered by five wells in 1919, to be $1.6947 per barrel, or an aggregate amount of $117,273.24. This rate per barrel was derived by respondent from the prices of oil at the various dates of discovery and the several estimated reserves of oil discovered, and respondent assumed a discount rate of 25 per cent, ascribed to deferment of production and in recognition of the element of hazard.

The aggregate of the petitioners' shares of the oil *produced* from the 345 acres was 61,977.35 barrels in 1919. Respondent allowed petitioners in 1919 deductions from income totaling $105,033.01 for depletion, based on the 61,977.35 barrels produced and the average discovery value of $1.6947 per barrel. Respondent determined that 79 per cent of the total production was derived from the 192 acres of land belonging jointly to the petitioners, and 21 per cent thereof was from the 153 acres of land, the separate property of Elisha Roper. There is no evidence before us of the locations of the various wells which were drilled on the 345 acres, or of the production of each of them.

An exchange of property between J. M. Allen and Elisha Roper was provided for in an agreement reading as follows:

STATE OF TEXAS,
　　　*County of Eastland.*

This Contract and agreement entered into in duplicate this the 28th day of October, A. D. 1919, by and between J. M. Allen of Eastland County, Texas, hereinafter called party of the 1st part and Elisha Roper of Eastland County, Texas, hereinafter called party of the 2nd part,

WITNESSETH: That party of the 1st part, for and in consideration of the exchange of lands and the delivery of good title to lands in Eastland County by party of the 2nd part, said lands described in another part of this contract. hereby agrees to deliver two tracts of land in Lynn County, Texas, to said 2nd party free from all incumbrances by good and sufficient deeds and abstract showing good and merchantable title in the said party of the 1st part, said lands described as follows,

FIRST TRACT: Being 920 acres in Lynn County, Texas, being the same land sold by party of the 1st part to E. B. Anderson and repurchased by said 1st party.

SECOND TRACT: Being 1,640 acres of land purchased from G. N. Lazenby by said 1st party.

Both tracts being the two tracts shown party of the 2nd part by said 1st party.

For and in consideration of the above the said 2nd party hereby binds himself and agrees to deliver good and sufficient deeds together with abstract showing good and merchantable title in him, to said 1st party FORTY AND NINETY SIX ONE HUNDREDS (40.96) acres being an undivided interest in and to the 345 acre E. Roper tract out of the John York Survey in Eastland County, Texas, said land being the only E. Roper Tract in Eastland County, Texas, upon which oil is now being produced. Said above interest is made subject to the mineral lease now held by the Prairie Oil and Gas Company.

It is hereby agreed and made a part of this contract that said parties are to have until December 5th, 1919, in which to deliver deeds and abstracts as above mentioned, and then to have 15 days in which to have same examined and defects cured if any. That party of the 1st part is to receive royalties on the above from November 1st, 1919 on the runs from that date. That party of the 2nd part is to have possession of the Lynn County Land not later than the 1st day of January 1920.

Witness our hands this the 27th day of October, 1919.

J. M. ALLEN
ELISHA ROPER.

The deed from Elisha Roper conveying title to the 4096/34500 of 1/8 of the oil reads as follows:

| Elisha Roper<br>To) M. Deed<br>International Crude Oil<br>Co. | File No. 9586<br>THE STATE OF TEXAS<br>COUNTY OF EASTLAND | KNOW ALL MEN BY<br>THESE PRESENTS: |
|---|---|---|

That I, Elisha Roper, of the County of Eastland and the State of Texas, in consideration of Ten Dollars cash and the exchange of lands the receipt of which is hereby acknowledged have granted sold and conveyed and do by these presents bargain, grant, sell and convey unto the said R. L. SHAW, C. E. BERG & B. R. JONES, Trustee for the International Crude Oil Co. an undivided Forty and Ninety Six One Hundred (40.96) acre interest in and to all natural gas, oil, petroleum, coal and all other mineral substances, in, on and under the following described lot, tract or parcel of land, lying and being situated in Eastland County, Texas, and being all those certain lots, tracts or parcels of land, lying and being situated in the County of Eastland and State of Texas, to-wit:

Being a part of the John York Survey and described in three tracts as follows:

FIRST TRACT: Beginning 1797 vrs. West of the N. E. Cor. of said John York sur. for the N. E. cor. this tract. Thence W. 1166⅔ vrs. to the N. W. cor. this tract; Thence S. 740⅔ vrs. Thence E. 1165⅔ vrs. to the S. E. Cor. this tract; thence N. 740⅔ vrs. to the place of beginning.

SECOND TRACT: Beginning 867 vrs. West of the N. E. Cor. of said John York Survey for the place beginning of this tract; thence West 930 vrs. to a corner, thence south 740⅔ vrs. thence East 450 vrs. thence North 32½ East to the place of beginning.

THIRD TRACT: Beginning 740⅔ vrs. South and 1377 vrs. West of the original N. E. Cor. of the said John York Survey, thence West 2382 vrs. to a new cor. thence S. 237 vrs. to corner, thence East 2380 vrs. to a corner thence in a Northeasterly direction with the Eastland and Ranger Public Road as said road now runs 255 vrs. to the place of beginning.

All of the above three tracts containing 345 acres of land.

Together with the right to enter thereon, open mines, drill wells, lay pipe lines and erect all structures and appliances necessary or convenient in searching for, procuring caring for, storing, and removing the above mentioned minerals and mineral substances.

It is expressly understood that the surface of the above described land is conveyed only for all purposes and uses above set forth. This grant and conveyance is made with the understanding that the Texas & Pacific Coal and Oil Company has a mineral lease on the above described land.

To have and to hold the same to the said Trustees for the International Crude Oil Co., its heirs, administrators and assigns forever, And I do hereby bind myself my heirs and executors and administrators and assigns forever to warrant and defend all and singular said mineral rights herein conveyed unto the said Trustees for the International Crude Oil Co. its heirs, and assigns, against the lawful claims of every person claiming or the claim the same or any part thereof.

Witness my hand this 29th day of November A. D. 1919.

ELISHA ROPER.

Filed Dec. 1, 1919 at 2 p. m.
Recorded Dec. 10, 1919, at 10 a. m.

Roper handed the deed to his attorney, W. F. St. John, with instructions to deposit it in the bank to be held in escrow until delivery was made by Allen of the deed to the lands to be received in exchange. Roper was unaware that the deed was filed and recorded early in December, 1919, and he could not testify as to the date it was delivered to Allen. Allen experienced difficulty in perfecting the title to the 1,640 acres of land he purchased from Lazenby and it was necessary for him to request and for Roper to grant an indefinite extension of time beyond the date specified in the agreement for curing defects in title.

E. B. Anderson executed on November 1, 1919, a deed to Allen of the 920 acres of land which Allen agreed to deed to Roper and deposited it with a bank in Eastland, Tex., to be there held in escrow, and not delivered until payment was made of the cash consideration amounting to $27,600. Anderson was anxious to realize on the sale and visited Eastland, Tex., on December 30 and 31, 1919, to investigate the to him unexpected delay in receiving payment. He was informed the delay was due to difficulties in perfecting title to the Lazenby lands. Anderson remained in Eastland on December 31, 1919, until it was definitely ascertained that the last mail for the day from Waco, Tex. (the place from which the title papers were expected) did not contain the papers, and being satisfied of the impossibility of securing payment, he then left Eastland, leaving his deed on deposit with the bank. On January 15, 1920, Anderson received a draft from the Eastland bank for $27,572, being the sale price of $27,600, less $28 for revenue stamps affixed to his deed. Roper received the Allen deed some time in January, 1920. The profit from the exchange was $67,600, and was apportioned to the petitioners by respondent on a basis of acreage owned; 153/345 going to Elisha Roper in his separate right, and 192/345 going equally to the petitioners as community income. The exchange was effected in the month of January, 1920.

In the calendar year 1921, Elisha Roper paid state, county, school and city taxes aggregating $4,668.98, and taxes for maintenance charges and bond tax for Cameron County Water Improvement District Number Two aggregating $798.79.

In the calendar year 1921 interest paid by Elisha Roper in that year allowable as a deduction from income amounted to $4,936.

Elisha Roper and wife sold to T. C. Campbell and T. L. Flagg in 1921, lots 8, 9 and 10 in Block A/2 in the City of Eastland, Eastland County, Tex. The consideration was the assumption of all liability to the Texas Bitulith Co. for street pavement in front of the property and the sum of $37,000, payable $250 on November 1, 1921, $750 on December 1, 1921, and $750 monthly thereafter. The payments actually received by the petitioners in 1921 amounted to $1,000. The respondent conceded the sale was on the installment basis, subject to the provisions of section 1208 of the Revenue Act of 1926.

OPINION.

MILLIKEN: The first issue relates to the deduction allowed by reason of section 214 (a) (10) of the Revenue Act of 1918, which provides as follows:

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

(10) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: *Provided*, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date: *Provided further*, That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter; such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee.

Petitioners introduced as evidence of the value of their interest in the oil and gas lease, sales of undivided interests in their holdings both before and after the first discovery was made. The sales prior to the date of the discovery were at the rate of about $700 per acre for the entire royalty interest and the sales after the date of discovery were at approximately $2,000 per acre. The sales prior to the date of discovery obviously have little bearing upon the value upon the date of discovery since it was not known prior to that date whether or not any oil existed in the property and therefore the values were for the most part speculative. The sales both prior and subsequent to the date of discovery were of undivided interests in the entire 345 acres. The record does not disclose the extent of the

area which respondent considered proven by the five discoveries made during the year 1919, nor by the sixth discovery made during the year 1920. The fact that a valuation based upon discovery was allowed in the year 1920 demonstrates that the entire area was not considered proven during the year 1919. Petitioner has introduced no evidence showing the estimated oil reserves on the entire 345 acres, but has proceeded on the assumption that the reserves of 117,000 barrels determined by the Commissioner as applicable to the entire royalty interest, applied to the entire 345 acres. There is nothing in the record to show that this assumption was correct. It is not reasonable to assume that a prospective purchaser would have paid $690,000 for the one-eighth royalty interest, as contended for by petitioner, if it were known that only some 117,000 barrels of oil could be recovered from the property and paid over to such interest, since the price of oil was $2.25 per barrel at the time of the first four discoveries in 1919, $2.50 per barrel at the time of the fifth discovery, and $2.75 per barrel at the time of the sixth discovery.

Since there is no information in the record showing the total expected amount of oil to be recovered from the 345 acres, we are unable to determine what the reasonable depletion rate per barrel would be, even assuming that the fair market value was $690,000 for the one-eighth royalty interest. Accordingly we hold that the petitioners have failed to show that the rate of depletion per barrel determined by the respondent was erroneous.

The second issue presents a question arising out of an exchange between Elisha Roper and J. M. Allen. The amount of profit is not disputed. The respondent determined that the exchange was effected in the year 1919, and has included the profit in income for that year The petitioners appeal from this determination, averring that the exchange was made in 1920.

It is clear from the agreement between Allen and Roper that they desired to effect the exchange within the calendar year 1919, and the deed to the nominees of Allen which Elisha Roper executed on November 29, 1919, and which was filed on December 1, 1919, and recorded on December 10, 1919, might lend probability to the occurrence of the exchange in December, 1919. Allen had difficulty in acquiring a clear title from G. N. Lazenby to 1640 acres of land included in the exchange with Roper and it was necessary for Allen to request and Roper to grant an extension of time of no stated duration beyond the dates specified in their agreement for the delivery of deeds and the perfecting of titles. The record is silent as to the exact date when delivery was made to Roper of the deeds to the lands he was to receive in exchange. In support of Elisha Roper's testimony that he received these deeds " some time in January, 1920,"

petitioners rely upon what transpired in the acquisition of 920 acres of land by Allen from E. B. Anderson, being the same 920 acres which Roper was to receive under the agreement between Allen and Roper. We are satisfied that Anderson executed a deed on or about November 1, 1919, to Allen for the land and deposited it in escrow in a bank at Eastland, Tex., there to be held until payment of the consideration was made and that thereafter a delay ensued so that the deed was still on deposit undelivered on December 31, 1919. It is also in evidence that Anderson received payment from the bank for his tract of land on January 15, 1920. Obviously, Allen could not convey title to Roper in the Anderson land until he acquired title from Anderson in January, 1920. In our opinion, the record supports the contention of the petitioners that the delivery to Roper of the deeds from Allen occurred in 1920.

After a careful consideration of the entire record, we are convinced that the exchange took place in the year 1920, and the income resulting from the exchange was received in the calendar year 1920.

Relative to the third issue, the respondent agreed to a stipulation that state, county and city taxes aggregating $1,379.07 were paid in 1921 and were properly allowable as a deduction from income in that year. Fifteen exhibits were filed by petitioners evidencing the payment of other taxes in 1921, aggregating $4,088.70, and the petitioners contended that the entire amount was deductible. Respondent objected to many of the items, pointing out the possibility of confusion with the taxes of "E. Roper," a brother of petitioner. We are relieved of all doubt on this score by the uncontroverted testimony of the petitioner that he paid the taxes and they were on his property and not that of his brother. Many of the items are state, county and school taxes in the same general classification as those agreed to by the respondent, and equally allowable. Claim is made for the deduction of taxes paid to the Cameron County Water Improvement District Number Two, aggregating $798.79, described as follows:

"The above amount being for maintenance charges and bond tax." While satisfied of the probablity that a part of this amount is allowable as a deduction, if not all of it, we are unable to determine from the record the amount properly allowable and the entire amount claimed is therefore disallowed. We find allowable a deduction aggregating $4,668.98 for taxes paid in 1921, inclusive of the amount of $1,379.07 agreed to by the parties.

> *Judgment will be entered upon 15 days' notice, under Rule 50.*

Considered by MARQUETTE, PHILLIPS, and VAN FOSSAN.